THOMAS J. AVERY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4788.        Promulgated December 17, 1926.

The amount of bad debts ascertained to be worthless and charged off from the petitioner's books of account in 1919 and deductible from gross income in the petitioner's income-tax return for that year determined.

*Edgar Watkins, Esq.,* for the petitioner.
*W. Frank Gibbs, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in the amount of $15,335.65, resulting from the Commissioner's disallowance of a deduction for bad debts claimed for the year 1919.

#### FINDINGS OF FACT.

The petitioner is an individual residing in Atlanta, Ga., and up to January 1, 1926, engaged in a business of selling steam engines,

sawmills, and woodwork machinery under the name of Avery & Co. He had been engaged in the business since 1903.

In making his income-tax return for 1919 the petitioner deducted from gross income $36,567.28 for bad debts ascertained to be worthless and charged off within the year. In the amendment of his tax return the Commissioner has allowed the deduction of only $1,841.26 of this amount and has increased net income by the balance. Most of the deficiency of $15,335.65 results from such disallowance.

The bad debts charged off and claimed as a deduction from gross income were all represented by notes which the petitioner received on sales of merchandise. These were known as twenty-year title retained notes and were sealed and recorded, and under the statutes of Georgia such notes were collectible for a period of twenty years. Title to the goods thus sold remained in the vendor until the notes were fully paid, and the goods might be repossessed at any time on the failure of the vendee to pay the notes when due. The notes ranged in amounts from $10 to $1,000 or more and were payable over the entire period from 1903 to 1919. The notes were usually given in a series and for small amounts payable at intervals from thirty to ninety days.

Most of the debtors were lumber men and farmers widely scattered over middle and south Georgia. The payments on the notes depended largely on the general prosperity of the community. It was the policy of the petitioner to be lenient with debtors and not to force collections by suit or to repossess goods until the debtors had been given every chance to meet their obligations. Representatives of the petitioner traveled over the territory from time to time, keeping in touch with the debtors and making collections whenever possible. A good many accounts were put in the hands of local attorneys for collection after recovery by other means had failed. During the years 1914 and 1915 business conditions in Georgia were bad. Cotton sold as low as 5 cents a pound. Debts were extremely difficult to collect and creditors generally, including the petitioner, were lenient with debtors. In the years 1918 and 1919 business conditions improved and the petitioner was vigilant in his efforts to collect or otherwise close all outstanding obligations. Letters were written to debtors urging settlements and the petitioner's agent and attorneys made many personal investigations of past due accounts. In a few cases the debtors had left the community in which they had resided and could not be found. In others they were found hopelessly insolvent, with no property to satisfy a judgment if obtained. In a few cases suits for collection were brought and accounts credited with the amounts collected on the judgment. Some of the machines which had been sold were repossessed and the resale or estimated value

thereof credited to the accounts of debtors. The machinery which had been in the hands of purchasers for many years was generally of little value.

The petitioner kept a single entry set of books. The notes herein considered were not entered in current accounts receivable but were kept in a separate book known as the note record book. All transactions relating to these notes, such as credits, renewals, etc., were recorded therein. There was a general profit and loss account but the notes were not reflected in such account. The petitioner did not ordinarily prepare balance sheets. Whenever they were prepared, the notes receivable were entered at their face value. Prior to 1919 no notes receivable were charged off as worthless on the petitioner's books of account. In December, 1919, the petitioner, with his bookkeeper, went over all the note records extending as far back as 1903, made a list of all unpaid or partially unpaid notes thought to be uncollectible and worthless at the time, and deducted the total amount of the same from income for that year. The notes were not charged off on the general ledger, nor was the list claimed reflected in the profit and loss account. Each note listed as uncollectible was marked with a check mark opposite the entry in the note record book, indicating that it had been charged to income tax in the year 1919.

The majority of the notes charged off were due and payable prior to March 1, 1913. Many of them had been paid in part, with only a small unpaid balance remaining. In many cases no payments had been made during recent years. In a few instances, however, the note records showed payments during the years 1918 and 1919. The petitioner did not relax his efforts during subsequent years, to collect the note accounts designated as " charged to income tax in 1919," and in numerous instances the debts claimed as bad in the tax return for 1919 were later collected. The following examples may be taken as typical of the 100 accounts comprising the whole:

J. I. BROWN ACCOUNT.

| Date of notes. | Due dates. | Amounts. | Payments. | |
| | | | Dates. | Amounts. |
|---|---|---|---|---|
| Feb. 10, 1909 | Dec. 1, 1909 | $150.00 | Nov. 7, 1910 | $100.00 |
| | Mar. 10, 1910 | 150.00 | Feb. 17, 1911 | 60.00 |
| | June 10, 1910 | 150.00 | Feb. 17, 1911 | 135.85 |
| | Sept. 10, 1910 | 150.00 | Goods sold in 1915 | 200.00 |
| | | | Loss claimed | 114.15 |
| | | 600.00 | | 600.00 |

### H. C. ALLAGOOD ACCOUNT.

| Date of notes. | Due dates. | Amounts. | Payments. | |
| | | | Dates. | Amounts. |
|---|---|---|---|---|
| Feb. 12, 1907 | Dec. 12, 1907 | $331.25 | Jan. 24, 1908 | $48.97 |
| | Mar. 12, 1908 | 331.25 | Feb. 11, 1909 | 200.00 |
| | | | May 4, 1909 | 75.00 |
| Interest and collecting expenses. | | 53.28 | Feb. 24, 1910 | 7.38 |
| | | | Do | 86.77 |
| | | | May 21, 1910 | 50.85 |
| | | | Jan. 10, 1911 | 150.00 |
| | | | July 10, 1911 | 100.00 |
| | | | Error | 2.33 |
| | | | Loss claimed | 14.48 |
| | | 715.78 | | 715.78 |

### J. D. CONNER ACCOUNT.

| Date of notes. | Due dates. | Amounts. | Payments. | |
| | | | Dates. | Amounts. |
|---|---|---|---|---|
| Feb. 12, 1919 | May 12, 1916 | $220.00 | June 29, 1916 | $50.00 |
| | Aug. 12, 1916 | 220.00 | Oct. 16, 1916 | 100.00 |
| | Nov. 12, 1916 | 220.00 | Apr. 24, 1917 | 50.00 |
| | Feb. 12, 1917 | 220.00 | June 11, 1917 | 250.00 |
| | May 12, 1917 | 220.00 | Feb. 12, 1917 | 208.00 |
| | Aug. 12, 1917 | 225.00 | Mar. 18, 1918 | 250.00 |
| | | | Feb. 19, 1919 | 200.00 |
| | | | Apr. 19, 1919 | 20.00 |
| | | | Loss claimed | 197.00 |
| | | 1,325.00 | | 1,325.00 |

The following debts, in the amounts indicated, are found to have been worthless at December 31, 1919, and charged off during that year:

| Debtor. | Amount claimed. |
|---|---|
| Beatenrieter, C. B. | $15.00 |
| Fender, J. F. | 265.16 |
| Knight, W. N. | 112.80 |
| | 392.96 |

### OPINION.

SMITH: In this appeal we find one of the too frequent examples of the administration of taxing statutes made exceedingly difficult because of irregular and improper bookkeeping practices. From the year 1903 to the year 1919 the petitioner carried on his books a constantly growing and changing account of notes receivable without ever having audited and closed his books in any intervening year. We find that in the year 1919 these unpaid notes included notes owed by something over 100 debtors, which notes the petitioner believed uncollectible on December 31, 1919. A majority of the notes be-

lieved to be uncollectible were due and payable prior to March 1, 1913. Not one of the accounts had been charged to profit and loss on the books of the petitioner or charged off in any year. The petitioner's income-tax returns for the years 1913 to 1918, inclusive, show no deduction for bad debts. In his income-tax return for the year 1919, he deducted from gross income $36,567.28 for bad debts. Upon an investigation and reaudit of his books, the petitioner now claims the deduction from gross income on account of bad debts of $24,012.43, in addition to the $1,841.26 allowed by the Commissioner.

The Commissioner objects to the deduction on the following grounds:

(1) That the debts in part were ascertained to be worthless prior to the year 1919.

(2) That the debts were not, within the meaning of the statute, charged off during the year 1919.

(3) That the debts were in part not worthless at December 31, 1919.

(4) That of the debts existing prior to March 1, 1913, only the cost or the March 1, 1913, value thereof, whichever is lower, may be deducted as a loss in any subsequent year.

Section 214 (a) of the Revenue Act of 1918 provides:

> That in computing net income there shall be allowed as deductions:
>
> *     *     *     *     *     *     *
>
> (7) Debts ascertained to be worthless and charged off within the taxable year.

The method of charging off the notes used by the petitioner was most unusual. The bookkeeper for the petitioner, the principal witness in this case, testified as follows:

> Q. How does it [the charge-off] ever get into profit and loss account?
>
> A. We don't have any profit and loss account. When they [the notes] are paid they go back in here and show up on this account. We keep after them all the time. If we charged them to loss and gain there might be a loss entirely. Leave it like that, it shows how much is collected, and if there is any balance there we still get after it. That was really not charged into loss and gain at all. It is just a record on the note register.
>
> Q. That simply represents a notation on the record here, the note record, that in 1919 you simply claimed it as a deduction from gross income in the income-tax return, did you?
>
> A. Yes.
>
> *     *     *     *     *     *     *
>
> Q. Each one of these accounts you still keep open today and if one of the makers of the notes come in you give him a credit on that account?
>
> A. Yes.
>
> Q. So there has been no actual closing of the account or no actual charging off except the notes charged off to income tax in 1919?
>
> A. That is it exactly. We keep them right here.

The statute does not provide any particular manner for the charging off of a bad debt. We think that the method employed by the petitioner meets the challenge of the statute. If the petitioner were a corporation and the corporation was required to prepare balance sheets for the purpose of determining invested capital and the notes receivable were included in the balance sheet at the face value of the notes, there might be a serious question as to whether this method of charging off bad debts met the challenge of the statute. But we think that in the case of this individual for the year 1919, the notation on the note record that the note was charged off to income tax constituted a sufficient compliance with the statute to warrant the petitioner in making the deduction provided the note was ascertained to be worthless within the calendar year 1919.

It appears to us, however, from the evidence, that there was no ascertainment of worthlessness of a great majority of the notes charged off in the manner above indicated in 1919. The petitioner was unusually vigilant in the collection of notes receivable. Through traveling salesmen and through a collector he continually kept in touch with his debtors, and wherever there was any possibility of collecting anything upon overdue notes the petitioner did not fail to make an effort to collect. This is shown by the fact that he brought many suits after a long period of years and, even where a *fieri facias* was returned *nulla bona*, the *fi. fa.* was kept alive as long as possible. Some of the notes were endorsed by persons believed by the petitioner to be responsible. Where the maker of the note went through bankruptcy, an attempt was made to collect from the endorser. The petitioner apparently made no special investigation of the likelihood of collection of delinquent notes in 1919. The bookkeeper testifying for the petitioner with respect to certain accounts could not recall any special investigation made of the account in 1919 by which the account was determined to be worthless in 1919. In reply to the question—

A lot of this property sold back in 1904, 1905, and 1906, where the notes had not been paid, did not make any investigation in regard to that property in 1919?

A. We were trying to collect it. I do not know about making an investigation. We always have a traveling man to see if there is any chance in the world to collect it.

He further testified:

Q. Do you recall the discussion about Mr. W. A. Abbott? Had you had any particular information in the year 1919 that you did not have in 1918?

A. I can't recall now that we had any particular information about it at all. As I told you in the beginning it was in 1919 that we took up all these old accounts and went through to see what we could collect and what we could not collect.

The ascertainment of worthlessness with respect to most of the accounts charged to income tax in 1919 appears to have consisted of nothing more than a discussion between the petitioner and his bookkeeper as to the likelihood of collection of accounts, many of which the petitioner had been unable to collect over a period of years. This is shown by the following testimony of the bookkeeper:

Q. Did you know yourself anything about the financial standing or responsibility of Mr. W. A. Abbott, of Doe Run, Georgia, between the year 1916, and 1919?

A. No, sir; not personally.

Q. Under whose direction or was it upon your own authority that you made those entries there about charging off in 1913 [1919]?

A. Mr. Avery and I would get together and decide if they were good.

Q. When did you and Mr. Avery get together and make those particular entries that have been read into the record, about charging off in 1919?

A. I do not remember the exact date.

Q. Was it along in February or March, 1920?

A. No; it was along in the latter part of 1919.

This Board has repeatedly held that in the ascertainment of the worthlessness of debts there must be an actual determination of worthlessness by the petitioner within the taxable year based on the failure of reasonable efforts to collect. *Appeals of Pacific Pipe & Supply Co.*, 2 B. T. A. 870; *Steele Cotton Mill Co.*, 1 B. T. A. 299; *Egan & Hausman Co.*, 1 B. T. A. 556; *Alemite Die Casting & Mfg. Co.*, 1 B. T. A. 548.

The evidence adduced at the hearing with respect to the history of each account is too voluminous to review here. It has been carefully gone over and the question as to the ascertainment of worthlessness within the year 1919 has been determined with respect to each account on the facts presented. Where it appears from the evidence that the debtor died within the year 1919, or that the petitioner abandoned his efforts to collect by reason of unsuccessful litigation during the year 1919, the account has been listed in the findings of fact as having been ascertained to be worthless and charged off within the year 1919. In cases where payments on accounts were made regularly up to or near the year 1919 and it is not shown that the debtor could not have made further payments, or where the accounts were obviously ascertained to have been worthless long prior to 1919, the claims for the deduction of such accounts have been disallowed. The evidence of record warrants the deduction of $392.96 for bad debts in addition to the amount allowed by the Commissioner.

> *Judgment will be entered on 15 days' notice, under Rule 50.*